State v. Sheppard and State v. Garner

———————

STATE OF NORTH CAROLINA v. CLIFFORD GENE SHEPPARD AND STATE OF NORTH CAROLINA v. JAMES THEODORE GARNER

No. 7918SC298

(Filed 3 July 1979)

1. Searches and Seizures § 15— no standing to contest search of another's premises

Defendants had no standing to contest the search of a residence and seizure of property therefrom where they were not on the premises at the time of the search, alleged no proprietary or possessory interest in the premises or any of the items seized, and were not charged with an offense which includes as an essential element the possession of the seized evidence at the time of the search and seizure.

2. Searches and Seizures §§ 16, 43— absence of written motion to suppress — involuntary consent by defendant's wife

The trial court erred in ruling that a search of one defendant's residence was illegal where no written motion to suppress was made as required by G.S. 15A-977(a). However, the court properly ruled that a second search of the residence was illegal where the court found upon supporting evidence that officers had no warrant but relied on consent given by defendant's wife, and that any consent given by her was not voluntary.

State v. Sheppard and State v. Garner

APPEAL by the State of North Carolina from *Crissman, Judge.* Order entered 9 November 1978 in Superior Court, GUILFORD County. Heard in the Court of Appeals on 26 June 1979.

On 5 June 1978, two true bills of indictment proper in form were returned against Clifford Gene Sheppard, the first charging him with felonious conspiracy to possess "on or about the 15th day of March 1978" stolen property belonging to Industrial Welding Supplies, Inc., and having a value of $15,611.89, and the second charging him with felonious possession "on or about the 15th day of March 1978" of the same stolen property. The property alleged to have been stolen consists of an acetelyne welding outfit, including regulators, gauges, torches, and other supplies such as welding gloves and masks which were seized in a search of defendant Sheppard's residence on 11 April 1978, and six electric welders and other welding equipment seized in a search of a house in Riverside, California, on 9 April 1978. Defendant James Theodore Garner was charged in a proper indictment with felonious conspiracy to possess "on or about the 15th day of March 1978" the allegedly stolen property recovered in the Riverside, California, search. Both defendants filed motions to suppress the use as evidence at trial the allegedly stolen property.

Prior to trial, a *voir dire* hearing was held on the defendants' motions. The State presented evidence tending to show the following:

On 7 April 1978, law enforcement officers William Edward Hunt, Charles Elwood Hatley, Paul Wade Scott, Charles L. Bulla, and other officers went to the residence of defendant Sheppard on rural unpaved road 2687 in Randolph County, North Carolina, pursuant to a warrant to search for paint chips, paint smears, scratch marks, and finger prints located on a yellow 1975 Cadillac automobile. Elaine Sheppard, the wife of defendant Clifford Eugene Sheppard, was contacted by law enforcement officers and agreed to meet them at the residence in Randolph County. The search warrant was served on Elaine Sheppard, and she informed the police that the garage was locked, that she did not have a key to it, and that the only way to enter the garage was through a window going from the inside of the residence into the garage. Mrs. Sheppard supplied the officers with a key to the residence

and an officer entered and unlocked the garage. Mrs. Sheppard also consented orally and in writing to a search of the premises. No threats or inducements were made in order to get her consent to search. Once inside the garage, the officers located a yellow Cadillac matching the description in the search warrant and affidavit, and made arrangements to have it towed away. The officers were in the garage for two to three hours waiting for a wrecker to arrive. During this time, numerous items in the garage, including a washing machine, dishwasher, riding lawnmower, and acetelyne welding outfit, were examined and photographed and then serial numbers recorded. None of the items listed in the indictments were removed from the garage on this date, however. On 9 April 1978, police arrived at a residence located at 5897 Jones Street in Riverside, California and secured a key to the house from Mr. Kermit Hare, who was a neighbor and the brother of the owner, Jewel Sheppard. Mr. Hare gave the officers permission to search the residence, and various electric welders and other welding equipment were seized. On 11 April 1978, Mrs. Elaine Sheppard was again contacted and asked for consent to search the Randolph County premises and to seize the welding equipment. She met the officers at the house and orally consented to a search and signed a consent to search form supplied by the officers at that time. When she arrived, there were five officers, four detectives, and one uniformed officer present at the house. The officers denied that they had told Mrs. Sheppard that they would break down the door if she did not consent. Mrs. Sheppard again supplied a key to the residence and the officers entered the garage and seized the welding equipment and work order forms with the name Industrial Welding Supplies, Inc., on them which were in a trash can.

Defendants presented evidence tending to show the following:

The residence in Randolph County that was searched on 7 and 11 April 1978 was owned by defendant Sheppard's mother. The defendant Clifford Eugene Sheppard and his wife, Elaine Sheppard, had lived in the house for about two years. On 7 April 1978 Detective Charles Bulla talked to Mrs. Sheppard at her place of employment and asked her to meet them at the house to let them search. She told him that she could not leave her job and he responded, "Well, if you don't get off, we'll go down there—we

got a search warrant—and we'll take the door down; we're going to have that Cadillac." As a result of the conversation, Mrs. Sheppard left work and drove to her house where there were 25 to 30 people. She was read the search warrant and she then opened the door and informed them how to get into the garage. On 11 April 1978, at about 2:00 p.m., the police again contacted Mrs. Sheppard in order to get her consent for them to return to the house and seize some of the property in the garage. Mrs. Sheppard informed them that she had to pick up her children from school at 2:30 p.m. and be at work at 3:00 p.m., and that they would have to get a search warrant to go back in her house. The police then told her that if she did not let them in the house, that they "would go get one [a search warrant] and come back and get you off the job." Mrs. Sheppard was afraid of being fired from her job if they came out to her place of employment, and she responded, "Well, please don't." The police then stated, "If you don't go, we'll take your door down and we'll get that stuff because we know what is in there. We seen [sic] it the first time." Mrs. Sheppard then agreed to meet the officers at her house and give them the key. Subsequently, Mrs. Sheppard went to the Magistrate's Office where she signed several forms, including an inventory form. She did not sign any consent to search forms at her house on either 7 April or 11 April prior to the two searches. Mrs. Sheppard testified, "I at no time on April 7th willingly and freely gave these officers permission to search my home." As to the second search on 11 April, Mrs. Sheppard testified, "I let them in because he said if I didn't, he would take my door down and go in when I wasn't there and get them. I did not willingly let them in on April 11th." With regard to the 9 April 1978 search of the Riverside, California residence of Jewel Sheppard, Mr. Kermit Hare testified that he did not have any property in the house, and that he was only there to feed a dog kept in a fenced-in portion of the backyard. Mr. Hare had a key to the house, and he gave the key to the officer who conducted the search. No one had given Hare permission or authority to allow anyone to search the house.

On 9 November 1978, Judge Crissman entered the following Order allowing defendants' motions to suppress:

The cases 78CRS17160 and 78CRS17161, wherein Clifford Gene Sheppard is the defendant, and the case 78CRS17162, wherein James Theodore Garner is the defendant, in these

cases, as to the motions to suppress evidence obtained by alleged search and seizure, in the April 7, 1978, instance, wherein there was a search warrant issued by the Clerk of the Superior Court of Randolph County, the Court is ruling that there is not sufficient evidence as to the reliability of the informant in the issuance of this search warrant and that in the effort that the officers made in getting the consent of the wife of the defendant, Clifford Gene Sheppard, that they apparently abandoned the search warrant and its limitations and went beyond the scope of the search warrant, and that for those reasons the Court is compelled to allow the motion to suppress.

In the April 11, 1978, instance, the Court finds that the consent or alleged consent given by the wife of Clifford Gene Sheppard was not given voluntarily; that various kinds of pressure were brought at the time, and that the officers had ample opportunity to obtain a search warrant but did not do so, and that in addition to that, in the case of *State vs. Hall*, our court has said that a wife cannot give consent. And, so, the motion as to this is allowed.

And as to the alleged search and seizure on April 9, 1978, in California, the Court rules that there was not sufficient evidence, even though this man carried a key, to show that he really had authority to give the officers consent to search these premises, and that in addition to that, the laws of the State of North Carolina were not complied with; particularly, in the failure of the officers to list the items that were confiscated and delivering a copy to the person who gave consent and to the owner, if possible, and that there actually was not sufficient evidence to show to the Court that there were stolen goods there or that they had grounds to believe that there were stolen goods there. So, the motion to suppress as to this is allowed.

From the foregoing Order, the State gave notice of appeal and certified that the appeal was not taken for the purpose of delay and that the evidence suppressed is essential to the case.

*Attorney General Edmisten, by Assistant Attorney General Donald W. Stephens, for the State.*

*W. B. Byerly, Jr., for defendant appellee Clifford Gene Sheppard.*

*Joe D. Floyd, for defendant appellee James Theodore Garner.*

HEDRICK, Judge.

[1]    Appellate review is permitted by G.S. § 15A-979(c). The State first contends that the trial court erred in granting the motion to suppress as to No. 78CRS17162 since defendant Garner lacked "standing" to contest the validity of the searches. We agree.

G.S. § 15A-972 provides: "When an indictment has been returned or an information has been filed in the Superior Court, or a defendant has been bound over for trial in superior court, a defendant *who is aggrieved* may move to suppress evidence in accordance with the terms of this Article." [Emphasis added.] This is the same terminology employed by Rule 41(e) of the Federal Rules of Criminal Procedure. *See* Official Commentary to G.S. § 15A-972. In construing the language in Rule 41(e), the United States Supreme Court, in *Jones v. United States*, 362 U.S. 257, 261, 80 S.Ct. 725, 731, 4 L.Ed. 2d 697, 702 (1960) stated:

> In order to qualify as a "person aggrieved by an unlawful search and seizure" one must have been a victim of a search or seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else . . .

> Ordinarily, then, it is entirely proper to require of one who seeks to challenge the legality of a search as the basis for suppressing relevant evidence that he allege, and if the allegation be disputed that he establish, that he was the victim of an invasion of privacy.

The principle that Fourth Amendment rights are personal rights that may not be asserted vicariously has been reaffirmed by the Supreme Court. *Rakas v. Illinois*, --- U.S. ---, 99 S.Ct. 421, 58 L.Ed. 2d 387 (1978); *Alderman v. United States*, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed. 2d 176 (1969).

In the present case, defendant Garner was charged with felonious conspiracy to possess stolen property "on or about the 15th day of March 1978." Defendant Garner was not present at the residence in Randolph County that was searched on 7 and 11 April 1978, or at the Riverside, California residence that was searched on 9 April 1978. Garner has neither alleged nor shown any possessory or proprietary interest in either residence or any of the items seized and listed in the indictment charging him with felonious conspiracy to possess stolen property. The burden is on the defendant to show that he is "aggrieved" within the meaning of G.S. § 15A-972 and that he has standing to contest a search allegedly violating his Fourth Amendment rights. This Garner has failed to do.

Thus, this case falls squarely under the rule announced in *Brown v. United States*, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed. 2d 208 (1973):

[T]here is no standing to contest a search and seizure where, as here, the defendants: (a) were not on the premises at the time of the contested search and seizure; (b) alleged no proprietary or possessory interest in the premises; and (c) were not charged with an offense that includes, as an essential element of the offense charged, possession of the seized evidence at the time of the contested search and seizure.

411 U.S. at 229, 93 S.Ct. at 1569, 36 L.Ed. 2d at 214. Consequently, the trial court erred in granting defendant Garner's motion to suppress in No. 78CRS17162 since Garner had no standing to contest any of the searches.

Likewise, with regard to defendant Sheppard's motion to suppress the evidence obtained in the 9 April 1978 search of the Riverside, California residence, the trial court erred in granting the motion. The record discloses that defendant Sheppard was not on the premises at the time of the search, alleged no proprietary or possessory interest in the premises or any of the items seized, and was charged with felonious conspiracy to possess stolen property and felonious possession of stolen property "on or about the 15th day of March 1978." Thus, under the above-quoted rule from *Brown*, Sheppard had no standing to contest the 9 April 1978 search.

We need not consider the question whether Sheppard has "automatic standing" under *Jones v. United States, supra*, with regard to the possession charge. *See Rakas v. Illinois*, --- U.S. at --- n. 4, 99 S.Ct. at 426, 58 L.Ed. 2d at 396, since under the indictment charging Sheppard with possession of the stolen goods, the State must prove that he possessed the property in North Carolina on the date charged in the indictment.

Thus, we hold the trial court erred in granting the motions to suppress any evidence obtained as a result of the search of the Riverside, California residence as to both defendants, and in granting the motion to suppress as to the defendant Garner with regard to the searches of the Randolph County residence.

Finally, we consider the trial court's order as it relates to the searches on 7 and 11 April 1978 of the Randolph County residence with respect to defendant Sheppard. The State contends that the officers were acting pursuant to a valid search warrant when they saw welding equipment in plain view in the defendant Sheppard's garage, and thus the trial court erred in its ruling that the 7 April 1978 search exceeded the scope of the warrant. We need not consider this argument for the reasons which follow, and thus we express no opinion as to the validity of the warrant or the search on 7 April 1978.

[2] A motion to suppress may be made at any time prior to trial unless the State gives notice within twenty working days before trial of its intention to use as evidence at trial a statement made by a defendant, evidence obtained as a result of a warrantless search, or evidence obtained as a result of a search with a warrant when the defendant was not present for its execution. G.S. § 15A-975(b) and -976. A motion to suppress evidence in superior court must be in writing, must state the grounds upon which it is made, and must be accompanied by an affidavit containing facts supporting the motion. G.S. § 15A-977(a). In the present case, there is no written motion to suppress by defendant Sheppard with regard to the 7 April 1978 search of the Randolph County house. We also note that no items were physically removed from the premises on 7 April 1978, nor is there any notice or other indication in the record that the State intends to introduce any evidence of any nature obtained as a result of the 7 April 1978 search relating to the charges in the present case. While the trial

judge's Order clearly refers to a motion to suppress evidence obtained in the 7 April 1978 search, no such motion appears in the record that would provide a basis for the Order, and thus that portion of the Order purporting to allow such a motion is gratuitous and a nullity.

The only remaining search contested by defendant Sheppard occurred on 11 April 1978 when the law enforcement officers seized various items listed in the indictments. The officers had no warrant authorizing them to be on the premises on that date, and any authority to search the garage could only have been by consent. The defendant Sheppard was not present at the time of the search and gave no consent. The only consent was that purportedly given by the defendant's wife. The trial judge, however, found as a fact that any consent given by her was not voluntary. There is ample evidence in this record to support this finding and thus it is binding on the appellate courts. *State v. Crews*, 286 N.C. 41, 209 S.E. 2d 462 (1974); *State v. Hunt*, 37 N.C. App. 315, 246 S.E. 2d 159 (1978).

The result is: That portion of the Order dated 9 November 1978 suppressing the evidence obtained as a result of the search of the Riverside, California residence on 9 April 1978 relating to the charges against Garner in No. 78CRS17162 and against Sheppard in No. 78CRS17160 and No. 78CRS17161 is reversed; that portion of the Order suppressing the evidence obtained in the 7 and 11 April 1978 searches of the Randolph County residence relating to the charges against Garner in No. 78CRS17162 is reversed; that portion of the Order relating to the suppression of evidence obtained as a result of a search of the Randolph County residence on 7 April 1978 as it relates to the charges against Sheppard in No. 78CRS17160 and No. 78CRS17161 is vacated; and, that portion of the Order suppressing the evidence obtained in the 11 April 1978 search in Randolph County, North Carolina is affirmed.

Reversed in part; vacated in part; affirmed in part; and remanded.

Judges VAUGHN and ARNOLD concur.